IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-02959-CMA-MEH

JESSICA MONTANEZ, individually
and on behalf of all other similarly situated,
        Plaintiff,
vs.

FUTURE VISION BRAIN BANK, LLC,
d/b/a THE GREEN SOLUTION,
a Colorado Limited Liability Company,
        Defendant.
_____

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**
_____

   Under Plaintiff's application of the TCPA, any recipient of marketing text messages who merely pleads certain magic language – irrespective of facts, consent, the lack of an ATDS or pleading standards – has standing to maintain a lawsuit in federal court. This simply is not the requisite standard. As such, Plaintiff's Amended Complaint should be dismissed for both lack of standing and failure to properly state a claim.

  I.  **STANDING IS A JURISDICTIONAL ISSUE**

   Dismissal for a lack of standing is jurisdictional, and thus properly brought under Fed.R.Civ.P. 12(b)(1). *See Colo. Envtl. Coal. v. Wenker,* 353 F.3d 1221, 1227 (10th Cir. 2004). When, as in this case, the motion presents a challenge to the facts upon which the subject matter jurisdiction depends, no presumptive truthfulness attaches to Plaintiff's allegations, and the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *United Tribe of Shawnee Indians v. United States,* 253 F.3d 543, 547 (10th Cir. 2001); *In*

*re Sims*, No. 08-41668, 2009 WL 4255555, at *1 (Bankr. D. Kan. Nov. 25, 2009) (considering such evidence outside the pleadings does not convert a motion brought under Rule 12(b)(1) to one under summary judgment); *Hernandez v. Grisham*, No. CIV 20-0942 JB\GBW, 2020 WL 6526163, at *1 (D.N.M. Nov. 5, 2020) (citations omitted). The Court may consider facts outside the pleadings for the purposes of the Rule 12(b)(1) portion of TGS's motion, including the evidence of consent that negates Plaintiff's claims. Plaintiff unsuccessfully attempts to overcome TGS's Motion to Dismiss by relying on unsubstantiated allegations that Plaintiff did not consent. However, the properly submitted evidence confirms that Plaintiff consented to receive communication from TGS. *See* Legg Aff., ECF 33-1. For these reasons, Plaintiff's request to strike the Affidavit of Eric Legg and Consent Record attached thereto (ECF 33-1) must be denied.

## II.   PLAINTIFF'S MOTION TO STRIKE IS IMPROPER

Plaintiff's request to strike violates Local Rule 7.1(d) ("a motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."). Moreover, "A motion to strike another party's motion should not be filed when an opposing response could adequately address the issues presented by that party's motion." Hon. Judge Arguello's Practice Standards at p. 5. As a result, Plaintiff's request should be "stricken or denied as a matter of course." *See* Honorable Judge Hegarty's Practice Standards at p. 3. Having failed to first confer with undersigned counsel and having failed to file a separate document, Plaintiff's motion to strike must also be denied on procedural grounds.

### III. PLAINTIFF PROVIDED EXPRESS *WRITTEN* CONSENT

#### A. Plaintiff's consent satisfies statutory requirements.

Contrary to Plaintiff's assertion, the affidavit submitted by TGS in connection with its Motion to Dismiss, and the consent attached thereto, confirms that Plaintiff provided express *written* consent. In 2012, the FCC confirmed that "consent obtained in compliance with the E-SIGN Act will satisfy the requirements of [the TCPA], including permission obtained via an email, website form, text message, telephone keypress, or voice recording." In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012). With regard to the express written consent requirement, the FCC expressly defines "signature" as including "an electronic or digital form of signature." 47 C.F.R. § 64.1200(f)(8)(ii). Plaintiff enrolled in The Green Solution's customer loyalty program, which required her to sign up and gave her the option to provide her telephone number. Legg Aff., ECF 33-1 at ¶¶ 10-13. Plaintiff provided her name, phone number ending in 6002, birth date, gender, and mailing address to The Company pursuant to her enrollment in TGS's customer loyalty program. *Id*. at 26-28. Under the clear language of the law and the FCC implementation of it, the screen capture from TGS's electronic records showing Plaintiff's election to participate in the company's customer loyalty program and receive communications via text satisfies the TCPA's requirement for express written consent.

#### B. Evidence of consent can defeat standing.

While Congress created a private right of action under the TCPA, that cause of action "does not necessarily mean that a plaintiff alleging a violation of the statute

[automatically] has Article III standing." *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 503–04 (8th Cir. 2018). "Even where a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 504 (citing *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016). To hold otherwise would be to permit anyone from claiming violation of the federal statute where clear facts reflect its inapplicability.

Plaintiff argues that TGS conflates the issue of standing with merits-issues. In order to make this argument, Plaintiff relies on Sixth and Ninth Circuit opinions and concedes that neither the Tenth Circuit nor its district courts have addressed this issue. However, and to the contrary of Plaintiff, at least one court in the Tenth Circuit already expressed its belief that this Circuit would <u>not</u> follow the expansive application of the TCPA taken by the Sixth and Ninth Circuits, and instead the Tenth Circuit would likely follow the lead of the Third, Seventh and Eleventh Circuits.[1] *See Hampton v. Barclays Bank Delaware*, No. 18-4071-DDC-ADM, 2020 WL 4698476, at *30 (D. Kan. Aug. 13,

---

[1] The clear majority of courts favor a narrow statutory reading of ATDS in assessing TCPA claims. Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential generator" is a question presently before the Supreme Court. *Facebook, Inc. v. Duguid*, No. 19-511, 926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, 2020 WL 3865252, *1 (2020) (oral argument heard on Dec. 9, 2020). The Second, Sixth and Ninth held that a predictive dialer or system that dials from a stored list can qualify as an ATDS under the TCPA. The Third, Seventh, and Eleventh require that technology must have the capacity to generate random or sequential telephone numbers to qualify as an ATDS. This Supreme Court ruling has a direct bearing on this case.

4

2020) (holding devices that exclusively dial numbers stored in a customer database do not qualify as autodialers for purposes of the TCPA). The Eleventh Circuit dismissed a plaintiff's case based on her voluntary provision of a cell phone number to a defendant, evidencing her prior express consent to be contacted. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1308 (11th Cir. 2015). Plaintiff unsuccessfully attempts to distinguish *Murphy* based on the facts; but the facts have more in common than Plaintiff leads this Court to believe. In *Murphy*, plaintiff filled out a medical release, acknowledgment form, and information form, providing consent to receive text messages. *Id*. Here, Plaintiff voluntarily enrolled in TGS's customer loyalty program. Legg Aff., ECF 33-1 at ¶ 25. As part of her enrollment, Plaintiff knowingly and voluntarily provided her name, phone number ending in 6002, birth date, gender, and mailing address to TGS. *Id*. at ¶ 26. When she enrolled, Plaintiff authorized receipt of text messages at the 6002 phone number from TGS. *Id*. at ¶¶ 28, 29. Thus, as in *Murphy*, Plaintiff's Amended Complaint is subject to dismissal.

Plaintiff's attempt to distinguish the authority provided by TGS repeatedly falls short. In *Nomax* as here, Plaintiff "both invited and did not rebuke" the subject communication. 899 F.3d at 504. The fact that *Nomax* involved facsimiles (and this case involves texts) does not alter the fundamental holding that consent negates standing. Plaintiff may not claim violation of the TCPA where she consented to the communication at issue and never asked for it to stop. Plaintiff attempts to distinguish *Winner v. Kohl's Dep't Stores, Inc.*, based on the type of evidence of consent presented. No. CV 16-1541, 2017 WL 3535038, at *8 (E.D. Pa. Aug. 17, 2017). There a stipulation provided evidence

of plaintiff's express written consent; here TGS's electronic records provide evidence of Plaintiff's consent to receive texts. While the type of evidence differs, the impact is the same: Plaintiff consented to the communication at issue. Moreover, *Whitacre v. Nations Lending Corp.*, No. 5:19CV809, 2019 WL 3477262, at *3 (N.D. Ohio July 31, 2019), which Plaintiff also tries to unsuccessfully distinguish, presents analogous facts. In both cases, the fact that plaintiff consented flies directly in the face of Plaintiff's contrary allegation that she did not provide her consent.

Finally, because Plaintiff consented, she could not have suffered a cognizable injury, which is required to assert constitutional standing for her claim. *See, e.g., Stoops v. Wells Fargo Bank, N.A.*, No. 3:15-83, 2016 U.S. Dist. LEXIS 82380, at *34 (W.D. Pa. June 24, 2016) (Plaintiff's privacy interests not violated when she received calls from Defendants that she originally solicited). Plaintiff signed up to receive communication from TGS, and thus can hardly complain when TGS sent the very communication she requested. Because Plaintiff lacks any injury, she does not have Article III standing and her case must be dismissed.

## IV.    PLAINTIFF LACKS STANDING WHERE NO ATDS WAS USED

Plaintiff has not alleged a concrete injury traceable to TGS's alleged use of an ATDS to text her cellular telephone in violation of the TCPA. Given that Plaintiff signed up for TGS customer loyalty program (Legg Aff., ECF 33-1 at ¶¶ 26-28), presumably to obtain the very sort of offers she thereafter received (and took advantage of), any professed "injury" she may have suffered from such texts was completely unrelated to the use of an ATDS. Any professed "harm" incurred by Plaintiff was therefore not the result

of TGS's alleged violations of the TCPA. Since Plaintiff would have been no better off had TGS refrained from the unlawful acts of which she was complaining, she does not have standing under Article III of the Constitution to challenge those acts in a federal suit.

### V.  PLAINTIFF FAILS TO PLAUSIBLY ALLEGE USE OF AN ATDS

Plaintiff's allegations "strongly suggest direct targeting rather than random or sequential dialing." *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2017 WL 635117, at *5 (N.D. Cal. Feb. 16, 2017), *rev'd and remanded*, 926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, 2020 WL 3865252, *1 (2020). Commercial content does not, in and of itself, suggest use of an ATDS. *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2020 WL 1274178, at *2 (D. Mass. Mar. 16, 2020) (dismissing TCPA case). Moreover, Plaintiff's own pleadings indicate the system employed by TGS required human involvement to text Plaintiff, negating the claimed use of an ATDS.[2] For example, the Amended Complaint alleges that TGS listed phone numbers and delivered instructions for "content" to be sent to each phone number "listed by Defendant." Am. Compl. at ¶¶ 34, 42. Plaintiff's contention that TGS used a "list" of numbers to be messaged, together with a failure to allege that *Plaintiff's* number was chosen randomly or sequentially, renders most plausible the scenario here in which Plaintiff affirmatively provided her telephone number to TGS in order to receive messages.

---

[2] Under the Third, Seventh and Eleventh Circuit applications, the defining feature of an ATDS is not how the numbers are *dialed*; it is how the numbers are *stored* and *produced*. *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), *cited in Jackson v. Regions Bank*, No. 20-2624, 2021 WL 754836, at *2 (7th Cir. Feb. 26, 2021) (striking down TCPA claims based on holding that only a system with "the capacity to generate random or sequential numbers" qualifies as an ATDS).

"While it is true, as many courts have observed, that a plaintiff should not be required to plead specific facts as to the technical specifications of the type of call system employed by the defendant, it also cannot be the case that every barebones TCPA claim can survive a motion to dismiss." *Perez v. Quicken Loans, Inc.,* Case No. 19-cv-2072*,* 2020 U.S. Dist. LEXIS 53476 (N.D. Ill.  March 27, 2020) (granting defendant's motion to dismiss the ATDS allegations). While "[i]t is common for a plaintiff to lack inside knowledge about a defendant's internal operations or equipment," a plaintiff cannot rely on conclusory allegations. *Hildre v. Heavy Hammer, Inc.*, No. 3:20-CV-00236-L-LL, 2021 WL 734431, at *2 (S.D. Cal. Feb. 25, 2021) (granting defendant's 12(b)(6) motion to dismiss TCPA claim) (citing *Twombly*, 550 U.S. at 555; *Armstrong v. Investor's Bus. Daily, Inc.*, 2018 U.S. Dist. LEXIS 216246, at *15 (C.D. Cal. 2018) ("allegations [that] are mere recitation of the legal definition of an ATDS" are insufficient)). The complaint must contain sufficient factual allegations to state a plausible TCPA claim. *Id.*

The cases relied on by Plaintiff either permit discovery to proceed based on minimal allegations because ATDS information is in the sole possession of the defendant (*see Izsak v. DraftKings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016); *Serban v. Cargurus, Inc.*, 2016 WL 4709077, at *4 (N.D. Ill. Sept. 8, 2016) or provide allegations that infer an ATDS was used (*see e.g., Metten v. Town Sports Int'l, LLC*, 2019 WL 1299939, at *3 (S.D.N.Y. Mar. 21, 2019). Plaintiff fails to sufficiently allege an ATDS was used or a TCPA violation under either approach. Plaintiff's complaint simply parrots the statutory definition of an ATDS and other provisions of the TCPA. Plaintiff fails to allege circumstances supporting an inference an ATDS placed the texts. They merely show that

TGS sent marketing texts to individuals on its customer list, customers who, like Plaintiff, signed up to receive these communications.

Complaints similarly pled to Plaintiff's have faced dismissal. In *Mantha v. QuoteWizard.com, LLC*, No. 19-cv-12235, 2020 WL 1274178 (D. Mass. Mar. 16, 2020), plaintiff asserted that: 1) defendant had a "strategy for generating new customers [that] involve[d] the use of an [ATDS]" to send texts; 2) the text messages were sent from a long code number; 3) the text messages contained commercial content; and 4) the number from which the texts were sent was registered to a "cloud-based telecom company that provides mass text messaging services." *Id.* The court expressed skepticism that the plaintiff's assertions were anything more than threadbare makeweights and concluded that they were insufficient to survive the motion to dismiss. *Id.* Specifically, the court determined that the "use of a long code" did not "support a plausible inference that an ATDS was used." *Id.* (emphasis in original). The court also observed that the plaintiff's allegations regarding the "number, frequency, nature and content of the two messages [did] not give rise to a plausible inference of the use of an ATDS." *Id.* at *2. As in *Mantha*, Plaintiff alleges a strategy to encourage purchasing of TGS's goods (Am. Compl. at ¶¶ 25-26), use of long code (*Id*. at ¶ 32), commercial content (*Id*. at ¶ 23), and use of a text-messaging platform (*Id*. at ¶ 35). As in *Mantha*, Plaintiff's allegations here fall short of plausibly alleging the use of an ATDS. At best, they suggest targeted advertising of a customer using a text messaging system.

At the motion to dismiss stage, Plaintiff bears the burden of "nudg[ing] [her] claims across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

9

570 (2007), a burden she has not met. Plaintiff's conclusory allegations fall short of what is required for plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Plaintiff's claims under the TCPA require dismissal.

## VI. TEXTS ARE NOT CALLS

Plaintiff offers a red herring argument that texts and calls are interchangeable terms. Federal Communications Commission (FCC) Declaratory Rulings have reaffirmed that text messages are subject to the same TCPA restrictions as phone calls. Meaning automated text messages are treated the same as phone calls placed from an ATDS. TGS does not dispute that a text message sent to a cellular telephone is subject to TCPA compliance. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 666–67, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016). However, there is no allegation that TGS *called* Plaintiff. The terms "call" and "text" are not interchangeable. The fact remains that Plaintiff's pleading fails to meet requisite pleading standards and is unrelated to what occurred in *this* case. Plaintiff's use of the term "calls" belies the fact that it cut and pasted its allegations from other complaints involving phone calls and not text messages.

## VII. CONCLUSION

This Honorable Court should DISMISS Plaintiff's Amended Complaint with prejudice and provide any and all other relief this Honorable Court deems just and appropriate.

Dated: March 23, 2021

Respectfully submitted,

/s/ P. Stephen Fardy
P. Stephen Fardy
Jonna McGinley Reilly
Jeffrey Becker
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
sfardy@smbtrials.com
jreilly@smbtrials.com
jbecker@smbtrials.com

Brenna Wolcott
Bryan Cave Leighton Paisner, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
(303) 861-7000
brenna.wolcott@bclplaw.com

*Attorneys for Defendant, Future Vision Brain Bank, LLC, d/b/a The Green Solution*